# United States Court of Appeals

## For the Eighth Circuit

_____

No. 22-2452

_____

Deborah J. Lightner

*Plaintiff - Appellant*

v.

Catalent CTS (Kansas City), LLC

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri

_____

Submitted: September 21, 2023
Filed: December 26, 2023

_____

Before COLLOTON, GRASZ, and KOBES, Circuit Judges.

_____

GRASZ, Circuit Judge.

Deborah Lightner sued her former employer, Catalent CTS (Kansas City), LLC ("Catalent"), under Missouri law for age discrimination and retaliation. On appeal, Lightner challenges the district court's adverse grant of summary judgment for her age discrimination and retaliation claims, as well as its denial of her motion for leave to file a sur-reply brief in the summary judgment proceedings. We affirm

in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. Background

Consistent with our standard of review, we present the facts in the light most favorable to Lightner, the nonmoving party, and grant all reasonable inferences in her favor. *Oglesby v. Lesan*, 929 F.3d 526, 531–32 (8th Cir. 2019).

Lightner worked for Catalent from 2012 to 2020, when she was between the ages of 56 and 64. Throughout her employment with Catalent, Lightner received multiple promotions, the last of which occurred in October 2018, when Lightner was promoted to "Director, Project Manager." Approximately a year after Lightner assumed her role as a director, three employees left her team, citing concerns with management and workload. Two of those employees specifically cited Lightner as a reason for their departures. And in Lightner's 2019 year-end review, Catalent rated Lightner's performance as "Partially Met Expectations," which is the second lowest rating on a five-point scale.

In January 2020, Kevin Economos, Catalent's Kansas City General Manager and Lightner's only on-site supervisor, left the company. Before that, Economos had worked with Lightner daily and praised Lightner in her director role. After Economos left Catalent, members within Catalent's management and human resources ("HR") teams discussed Lightner's declining performance.

By February 2020, Catalent decided to act. Two more employees from Lightner's team resigned, again citing Lightner as one of the reasons for their departures. Catalent management and HR considered three options for Lightner: (1) place her on a performance improvement plan ("PIP"); (2) demote her to a lower-level position; or (3) end her employment and offer her a severance plan. Members of Catalent's management and HR team were concerned about the managerial risks of Lightner running her department on a PIP.

On February 13, Catalent gave Lightner her mid-year performance review, told Lightner she was rated "not on track," and asked Lightner whether she was interested in staying in her current position, but on a PIP, or receiving a demotion to the Senior Manager role. Five days later, on February 18, Lightner emailed Catalent, writing she believed her age was a factor in her employment options. In that same email, Lightner chose to be placed on a PIP and stay in her current position. Just two days later, on February 20, Catalent met with Lightner and told her the PIP was no longer an option—she could either accept a demotion or a severance plan. Lightner told Catalent she did not want a demotion. Catalent then provided Lightner with a proposed separation agreement with a severance plan. Catalent allowed Lightner twenty-one days to review the document.

Lightner worked from home on Friday, February 21 and took paid time off the following work week. On Friday, February 28, Reid Tonik, Lightner's direct supervisor, texted Lightner to ask whether she intended to accept the demotion to the Senior Manager role. Lightner responded to Tonik by email, explaining that she felt Catalent was retaliating against her for raising a complaint of age discrimination. Tonik emailed Lightner the following Monday, March 2, explaining Catalent would consider Lightner to have resigned if she did not report to work the next day. Lightner did not report to work on March 3.

Lightner subsequently sued Catalent in Missouri state court, alleging age discrimination, sex discrimination, and retaliation in violation of the Missouri Human Rights Act, Mo. Rev. Stat. §§ 213.010–.137 ("MHRA"). Catalent removed the case to federal court based on diversity jurisdiction and filed a motion for summary judgment on all of Lightner's claims. Lightner conceded to dismissal of her sex discrimination claim under the MHRA but otherwise opposed Catalent's motion. After Lightner filed her response brief, Catalent produced court-ordered evidence of certain text messages between members of Catalent leadership from the day following Lightner's complaint of age discrimination. Lightner moved for leave from the district court to file a sur-reply brief, but the district court denied leave.

The district court granted summary judgment in favor of Catalent on Lightner's discrimination and retaliation claims. Specifically, the district court held (1) Lightner did not establish Catalent's proffered justifications were a pretext for discrimination;[1] and (2) the timing between Lightner's discrimination complaint and Catalent's subsequent revocation of the PIP option did not alone establish that retaliation was a motivating factor for Catalent's adverse action. Lightner appeals the adverse grant of summary judgment on her claims and the denial of her motion for leave to file a sur-reply brief.

## II. Analysis

We review the district court's "grant of summary judgment de novo." *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1134 (8th Cir. 1999) (en banc). Summary judgment is only appropriate if the evidence, viewed most favorably for the nonmoving party, demonstrates no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Meier v. St. Louis*, 934 F.3d 824, 827–28 (8th Cir. 2019). *See also* Fed. R. Civ. P. 56(a).

### A. Age Discrimination

The district court held Lightner's age discrimination claim failed because Lightner "has not established that Catalent's proffered justifications are a pretext for discrimination." We agree.

We analyze MHRA age discrimination claims under the same framework as claims under the federal Age Discrimination in Employment Act. *Ramlet v. E.F. Johnson Co.*, 507 F.3d 1149, 1152 (8th Cir. 2007). Under the MHRA, an employee

---

[1]The district court also dismissed Lightner's claim for a hostile work environment because Lightner's "allegations of a hostile work environment amount to isolated instances of unpleasant conduct rather than a pattern of severe or pervasive harassment." Lightner does not appeal the dismissal of her hostile work environment claim.

who "presents no evidence of direct discrimination must satisfy the *McDonnell Douglas* burden-shifting framework." *Bonomo v. Boeing Co.*, 63 F.4th 736, 742 (8th Cir. 2023) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802—03 (1973)).  Under the *McDonnell Douglas* framework, an employee must first show a prima facie case of age discrimination.  *Ramlet*, 507 F.3d at 1153.  "The burden of production then shifts to the employer to 'articulate some legitimate, nondiscriminatory reason for the employee's rejection.'"  *Hilde v. City of Eveleth*, 777 F.3d 998, 1004 (8th Cir. 2015) (quoting *McDonnell Douglas*, 411 U.S. at 802).  If such a reason is articulated, the burden then returns to the employee "to [present] evidence that the employer's proffered explanation is pretext for unlawful discrimination."  *Id.*  An employee may show pretext through various means, such as by presenting evidence that the employer treated similarly-situated employees in a favorable manner, did not follow its own policies, "shifted its explanation of the employment decision," or by showing evidence of a decision maker's biased comments.  *Grant v. City of Blytheville*, 841 F.3d 767, 774 (8th Cir. 2016).

Here, Lightner tries to show pretext by arguing Catalent treated a younger, similarly-situated employee, Erin Killeen (age 41), more favorably.  But Lightner and Killeen cannot be similarly situated due to several distinguishing circumstances.  *See Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir. 2000) ("[T]he individuals used for comparison must have . . . engaged in the same conduct without any mitigating or distinguishing circumstances.").  Members of Lightner's team specifically pointed to Lightner's lack of leadership when they resigned.  One team member said in an exit interview, "I think [Lightner] is the most un-engaged.  I know she is busy but she needs to have more contact with the group."  Another team member noted the "lack of support from [Lightner]" as a reason for his departure.  He elaborated that Lightner is "not the right fit for that role. You will continue to lose people with her in that role."  Although members of Killeen's team also resigned, Lightner does not allege those employees resigned because of Killeen's leadership.  Therefore, Lightner and Killeen's different marks in performance reviews do not show pretext, as Lightner and Killeen's performances were not comparable.  *See Gilmore v. AT & T*, 319 F.3d 1042, 1046 (8th Cir. 2003) (noting certain other employees are not

similarly situated when the plaintiff "did not establish that the circumstances of their misconduct were comparable in severity or frequency to [the plaintiff's] infractions.").

Next, Lightner claims Catalent managers made certain negative, age-related comments. None of these comments, however, support a reasonable inference of age discrimination. For instance, during a leadership meeting discussing whether Lightner should be promoted from interim to permanent director, Kristen Devito, Catalent's Global Director of Project Management, shared that she did not think Lightner was the "long-term solution" for the director role. But there is no other probative evidence indicating that comment was based on Lightner's age, as opposed to her performance or skill set. *See Ranieri v. Highland Falls-Fort Montgomery Sch. Dist.*, 198 F. Supp. 2d 542, 545 (S.D.N.Y. 2002) (noting the phrase "long term plans" does not necessarily have an age-based meaning). Lightner also points out that decision makers in Catalent mentioned "retirement" and an "exit plan," and discussed her age. These fleeting references to retirement are not enough to infer age discrimination. Although "retirement inquiries can sometimes be so unnecessary and excessive as to constitute evidence of discriminatory harassment," "an employer may make reasonable inquiries into the retirement plans of its employees and . . . a plaintiff should not be able to rely on those inquiries to prove intentional discrimination." *Montgomery v. John Deere & Co.*, 169 F.3d 556, 560 (8th Cir. 1999). Here, the minimal retirement discussions were not "so unnecessary and excessive" to raise an inference of age discrimination. *See id.*[2]

We also reject Lightner's argument that Catalent's "unsupported performance criticisms and failure to provide any feedback or coaching" are indicative of pretext. Criticisms and lack of coaching are generally not factors to prove pretext in a

---

[2]Lightner also points to a comment by Reid Tonik, Lightner's direct supervisor. After the head of HR asked Tonik whether Lightner would be "on track" for her mid-year performance rating, he responded, "why do you ask? :)" Lightner claims Tonik's response was sarcastic and suggests he planned to rate her poorly. Even if we infer sarcasm, Tonik's question was not age-related.

discrimination suit. *See Evers v. Alliant Techsystems, Inc.*, 241 F.3d 948, 959 (8th Cir. 2001) (noting it is lawful to make "employment decisions based upon poor job performance, erroneous evaluations, personal conflicts between employees, or even unsound business practices" as long as these decisions are not the result of discrimination).

Lastly, Lightner claims Catalent failed to follow its own discrimination policies because Catalent's HR Investigation Training Manual contained a policy requiring an investigation of any complaints of discrimination, and no one investigated Lightner's complaint. But Catalent claims it investigated her allegations when it asked her for examples of the alleged age discrimination. "The appropriate scope of an internal investigation . . . is a business judgment, and we do not review the rationale behind such a decision." *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1005 (8th Cir. 2012). Moreover, "shortcoming in an internal investigation alone, without additional evidence of pretext, would not suffice to support an inference of discrimination on the part of the employer." *Edwards v. Hiland Roberts Dairy, Co.*, 860 F.3d 1121, 1127 (8th Cir. 2017). Here, Lightner has not presented any facts to create an inference that age discrimination motivated Catalent's lack of sufficient investigation.

In sum, Lightner failed to show Catalent's proffered justifications, namely Lightner's history of deficient performance in the director role, were pretext for age discrimination. We affirm the district court's dismissal of her age discrimination claim.

## B. Retaliation

The district court found there is not sufficient evidence to support a retaliation claim. We disagree.

Before determining the merits of Lightner's retaliation claim, we must first resolve whether evidence Lightner received from Catalent after summary judgment

-7-

briefing was improperly excluded when the district court denied Lightner's motion for leave to file a sur-reply brief. We review the district court's denial of a motion for leave to file a sur-reply for an abuse of discretion. *Cornice & Rose Int'l, LLC v. Four Keys, LLC*, 76 F.4th 1116, 1123 (8th Cir. 2023). On December 22, the district court ordered Catalent to provide information to Lightner which would facilitate production of Tonik's text messages in and around the time Lightner complained of age discrimination. On December 24, Lightner filed her opposition to Catalent's motion for summary judgment. On January 12, Catalent produced the disputed text messages. The text messages showed that, one day after Lightner's allegation of age discrimination, Tonik shared, "[t]aking PIP off the table" was a "new idea" by Jeff Wheeler, the HR Manager, and asked for Devito's approval of the idea. Devito responded affirmatively with a thumbs-up emoji.

Lightner filed her motion for leave to file a sur-reply brief, alleging: (1) Catalent raised new arguments in its reply brief and (2) the court-ordered text messages contained evidence of retaliation. The district court denied Lightner's motion for leave to file a sur-reply without explanation. This was an abuse of discretion, at least to the extent the denial meant the district court did not consider this highly probative evidence in resolving Catalent's summary judgment motion. The district court adversely granted summary judgment on Lightner's retaliation claim because "there is not sufficient evidence to support more than a temporal connection between protected activity and an adverse employment action." This suggests the district court disregarded the text messages revealing that the "new idea" of taking the PIP option away occurred after Lightner made her complaint of age retaliation, which supported "more than a temporal connection" for Lightner's retaliation claim. Thus we conclude the district court abused its discretion by improperly excluding court-ordered evidence when it denied Lightner's motion for leave to file a sur-reply. We will thus consider this evidence to be in the record as part of our analysis of whether Lightner's retaliation claim survives Catalant's motion for summary judgment, the substance of which we turn to now.

Missouri courts may follow federal law when it is consistent with the MHRA. *Heuton v. Ford Motor Co.*, 930 F.3d 1015, 1019 (8th Cir. 2019). To prevail on a retaliation claim under the MHRA, Lightner must prove: (1) she complained about discrimination; (2) Catalent took adverse action against her; "and (3) a causal relationship existed between the complaint and the adverse action." *Eivins v. Mo. Dep't of Corr.*, 636 S.W.3d 155, 180 (Mo. Ct. App. 2021). To demonstrate a causal relationship, Lightner must demonstrate her "complaint was a motivating factor in the . . . adverse employment action by providing direct evidence of retaliation, or creating an inference of retaliation under the *McDonnell Douglas* burden-shifting framework." *Id.* "[C]ircumstantial evidence that tends to support an inference of retaliatory motive is sufficient." *Holmes v. Kansas City Pub. Sch. Dist.*, 571 S.W.3d 602, 611 (Mo. Ct. App. 2018). An example of "circumstantial evidence of causation include[s] . . . close temporal proximity between the complaint and the adverse action." *McGaughy v. Laclede Gas Co.*, 604 S.W.3d 730, 752 (Mo. Ct. App. 2020).

Related federal law consistent with Missouri law further supports Lightner's retaliation claim at the summary judgment stage. Though "[a]n employee can establish a causal link between her protected activity and the adverse employment action through 'the timing of the two events[,]'" *Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 866 (8th Cir. 2006) (quoting *Eliserio v. United Steelworkers of Am.,* 398 F.3d 1071, 1079 (8th Cir. 2005)), "[t]emporal evidence should generally be corroborated by other evidence of employment discrimination." *Marez v. Saint-Gobain Containers, Inc.*, 688 F.3d 958, 963 (8th Cir. 2012). But there is an exception to that general rule: when the temporal proximity is "very close," temporal proximity alone may be "sufficient to create an inference of the causal link." *Id.* In *Marez*, the court held that when the adverse action "occurred less than forty-eight hours after notice of the protected activity was given, the timing of the two events could support the jury's finding of discrimination." *Id*.

For summary judgment purposes, the parties agreed Lightner complained of discrimination and that Catalent removed the PIP option for Lightner. Therefore, the first two elements of Lightner's retaliation claim are satisfied. We now examine

whether Lightner provided sufficient evidence to create a causal inference of retaliation.

Three key events form the basis of Lightner's retaliation claim. First, on February 13, 2020, Catalent told Lightner that she was rated "not on track" and asked Lightner whether she would prefer either a PIP or a demotion. Second, on February 18, Lightner emailed Catalent stating she believed her age was a factor in her employment options. In that same email, Lightner chose to be placed on a PIP and stay in her current director position. Third, within forty-eight hours, on February 20, Catalent told Lightner the PIP was no longer an option—her only options were a demotion or a severance plan. The close temporal proximity between Lightner's age discrimination complaint and Catalent's adverse action of removing the PIP option arguably creates a sufficient inference of retaliation to submit the claim to the jury. *See, e.g., Marez*, 688 F.3d at 963. This inference was bolstered by the late-produced evidence of back-to-back February 18 and 19 text messages, where Tonik forwarded Lightner's email alleging age discrimination and then asked Devito for approval to remove the PIP option for Lightner.[3] Combined, the evidence is sufficient to support a reasonable inference of a causal relationship.

### III. Conclusion

We affirm the district court's grant of summary judgment on the age discrimination claim. We reverse summary judgment on the retaliation claim and remand for further proceedings consistent with this opinion.

_____

---

[3]Tonik wrote to Devito, "Jeff has new idea to give the option of 3-month package or forced demotion to the Sr. Pm role. Taking PIP off the table. He's got ryan and [redacted] approval. Need yours, and then Jeff and I can meet with her tomorrow."